**ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, Defendant.**

14-CV-04394 (AJN) (BCM)

United States District Court, S.D. New York.

Signed June 14, 2016

Arthur C. Leahy, Steven W. Pepich, Ashley M. Robinson, Cody R. LeJeune, Darryl J. Alvarado, Jennifer Nunez Caringal, Joseph Marco Janoski Gray, Juan Carlos Sanchez, Lucas F. Olts, Robbins Geller Rudman & Dowd LLP, San Diego, CA, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, Christopher M. Wood, Robbins Geller Rudman & Dowd LLP, San Francisco, CA, for Plaintiffs.

Kevin James Biron, Bernard J. Garbutt, III, Grant R. MacQueen, Regina Schaffer-Goldman, Morgan Lewis & Bockius LLP, New York, NY, Ashley Anelcha Krupski, Dennis Sinclitico, Jr., Elizabeth Allen Frohlich, Rollin Bernard Chippey, Tera Marie Heintz, Morgan, Lewis & Bockius LLP, San Francisco, CA, for Defendant.

## ORDER

BARBARA MOSES, United States Magistrate Judge

Plaintiff Royal Park Investments SA/NA (Royal Park) is a Belgian limited liability company formed as a special purpose vehicle during the 2008 financial crisis to take over certain distressed assets held by Fortis Bank SA/NV and its affiliates. Beginning in 2012, Royal Park sued a number of United States-based financial institutions in an effort to recover losses sustained in its residential mortgage-backed securities (RMBS) portfolio. There are now at least five such suits pending in this District, in which Royal Park, represented by the firm of Robbins Geller Rudman & Dowd LLP (Robbins Geller) seeks damages from those financial institutions in their capacities as trustees of various RMBS trusts.

This is one of those cases. Another is *Royal Park Investments SV/NA v. U.S. Bank National Association,* No. 14–CV–02590 (VM) (JCF) (*U.S. Bank*).

The allegations against defendant U.S. Bank in No. 14–CV–02590 are very similar to the allegations against defendant Deutsche Bank National Trust Company (Deutsche Bank) in this action. The two complaints assert the same claims, on the same legal theories, and contain many of the same factual allegations. In addition—and key to the dispute now before the Court—both defendants are represented by the firm of Morgan, Lewis & Bockius, LLP (Morgan Lewis) and each of them, through Morgan Lewis, executed a Stipulation and Agreed Protective Order (Protective Order) which provides, among other things, that all discovery materials "produced or disclosed in connection with this Action shall be used solely for the prosecution or the defense of this Action (including any appeal therefrom)." *See* Prot. Order (Dkt. No. 77), ¶ 2; *U.S. Bank* Prot. Order (Dkt. No. 70 in No. 14–CV–02590), ¶ 4. Although the stated purpose of each Protective Order is to facilitate the discovery and handling of materials that "merit confidential or highly confidential treatment," *see* Prot. Order ¶ 1; *U.S. Bank* Prot. Order ¶ 1, the provision requiring that discovery materials be "used solely for the prosecution or defense of this Action" applies to "all" discovery materials, whether "confidential," "highly confidential," or entirely pedestrian.

### Royal Park's Application

Royal Park now complains that Deutsche Bank violated the Protective Order by "utilizing Discovery Materials produced by [Royal Park] in this action to defend a separate client, U.S. Bank ... in separate litigation as to which [Royal Park] is also a party." Pl. Ltr. dated May 27, 2016 (Dkt. No. 170), at 1. Plaintiff does

not contend that defendant's counsel used a document produced in this action to cross-examine a witness in *U.S. Bank* (or vice versa), nor that counsel revealed deposition testimony taken in *U.S. Bank* by filing it in this case (or vice versa). Rather, plaintiff claims that the violations occurred when:

(a) during a December 16, 2015 "meet and confer" between counsel in *U.S. Bank*, a Morgan Lewis attorney alluded to the fact that certain documents had already been produced in this action—for the purpose of arguing that Royal Park should promptly produce the same documents in *U.S. Bank*;

(b) during a March 30, 2016 discovery conference before me, a Morgan Lewis attorney revealed that he "knew about the hit rates for search terms provided to defendants in other trustee actions involving [Royal Park]," including *U.S. Bank*—for the purpose of explaining that Royal Park was capable of providing "hit rates" to Deutsche Bank as well;

(c) during a break in a May 19, 2016 deposition in *U.S. Bank*, a Morgan Lewis attorney reminded a Robbins Geller attorney that certain documents had previously been produced in this action—for the purpose of arguing that Royal Park should promptly produce the same documents for use in that deposition.

Pl. Ltr. dated May 27, 2016, at 1-2. Royal Park argues, based on these incidents, that there has been a "clear violation of the Protective Order." *Id.* at 2. Plaintiff asks that Morgan Lewis be ordered to "disclose" any and all similar violations of the Protective Order and "utilize separate lawyers and personnel on the *Deutsche Bank* and *U.S. Bank* actions to prevent future violations." *Id.* at 4.

Royal Park does not identify any concrete prejudice flowing from the claimed violations.[1] Instead, it argues that the "obligation to comply with the Protective Order does not hinge on a showing of prejudice," and contends that strict compliance is required "to ensure that Defendant is not abusing the discovery system." Pl. Reply Ltr. dated June 6, 2016, at 3.

Deutsche Bank denies that any of the conduct at issue violates the Protective Order. There is a difference, it argues, between "the use of knowledge of the existence of certain documents and the use of their contents," Def. Ltr. dated June 2, 2016, at 3; in defendant's view, the Protective Order prohibits only the latter. Thus, in the first and third incidents described by Royal Park, Deutsche Bank contends that it was permissible for its attorneys to use their "knowledge of the existence of" documents previously produced in this action to advocate for their production in *U.S. Bank* as well. *Id.* As for the second incident, defendant asserts that the "hit rate" information discussed during the March 30, 2016 conference did not even qualify as Discovery Material, as that term is used in the Protective Order. *Id.* at 1-2.

## Analysis

■ The question underlying Royal Park's application is whether a stipulated

---

1. The parties do not disclose whether Morgan Lewis's advocacy during the December 16, 2015 meet and confer induced Royal Park to produce the requested documents for use in *U.S. Bank*. The colloquy at the May 19, 2016 deposition resulted in an order from Magistrate Judge James C. Francis IV, presiding in *U.S. Bank*, that Royal Park "immediately produce the documents" for use in that case. Def. Ltr. dated June 2, 2016 (Dkt. No. 191), at 2. Judge Francis's order cannot, of course, be characterized as "prejudice." There is nothing unfair about being required to produce relevant and unprivileged documents in discovery.

court order barring the "use" of discovery documents in other cases prohibits counsel not only from making any substantive use of such documents, or the information they contain, but also from using the knowledge that the documents exist, even for the limited purpose of obtaining the same or similar documents in another case in which they are arguably discoverable but have not yet been produced. Royal Park relies heavily on *Jazz Pharms. Inc. v. Amneal Pharms. LLC,* 2016 U.S. Dist. LEXIS 61373 (D.N.J. Jan. 22, 2016), which answered this question in the affirmative, but also expressed concern about the potential for "unfair gamesmanship" under such an interpretation. *Id.* at *14.

*Jazz* was a patent dispute in which the parties' Discovery Confidentiality Order (DCO) stated that confidential documents and information produced in discovery could be used "solely for the purposes of this litigation and not for any business or competitive purposes." *Id.* at *3. The same parties were also engaged in inter partes review (IPR) proceedings before the U.S. Patent and Trademark Office (USPTO). *Id.* Defendants Amneal and Par wrote to Jazz to demand that it produce certain documents in the IPR proceedings that it had previously produced under the DCO in the district court case. *Id.* at *4-5. Defendants identified the documents by bates number and asserted that they were inconsistent with one of the positions Jazz was taking in the IPR proceedings. *Id.* Jazz sought sanctions, arguing that defendants' conduct violated the DCO. *Id.* Magistrate Judge Joseph A. Dickson agreed:

> [I]n utilizing information gleaned from confidential documents that Jazz produced pursuant to the terms of the DCO (e.g., using those documents as evidence of an alleged inconsistency in a position that Jazz took in the IPR proceedings,

and confirming the origin of that position by referring to specific bates-numbered documents), both Amneal and Par unequivocally violated the terms of that Order.

*Id.* at *5-6.

Judge Dickson went on, however, to express concern that the DCO (as he read it) would prohibit not only prejudicial misuse of confidential discovery information but also the "legitimate use" of such information "to establish that a party has wrongfully failed to produce relevant documents" in other proceedings. *Id.* at *13-14. The court therefore deferred the question of monetary sanctions and ordered the parties to meet and confer concerning revisions to the DCO that would allow "legitimate use" of discovery materials and thereby "reduce the potential for unfair gamesmanship." *Id.* at *14. If the parties failed to solve this problem, Judge Dickson added, he might "reconsider" his prior decisions. *Id.*

I share Judge Dickson's concern about the potential for unfair gamesmanship that would flow from interpreting the Protective Order in the manner now advocated by Royal Park. Such an interpretation would allow it to withhold relevant and discoverable documents in one action with impunity, even after producing them in a similar case (and even if there was nothing confidential about the documents themselves), safe in the knowledge that its adversary could not mention their existence without risking sanctions. Royal Park's inability to identify any concrete harm suffered as a result of Deutsche Bank's conduct underscores my concern and suggests that plaintiffs primary objective is not to prevent discovery abuse by the defendants it has sued but to hamper their ability to obtain discovery to which they are enti-

tled.[2]

However, I do not believe that revisions to the Protective Order are required to avoid an unjust result on the pending application. Royal Park has not identified any case other than *Jazz* which has sanctioned a litigant, under comparable protective order language, merely for using its knowledge of the existence of discovery documents in one case to advocate for their production in other litigation in which those documents are also discoverable. To the contrary: in *Milwaukee Elec. Tool Corp. v. Snap–on Inc.*, 2016 WL 1719657 (E.D.Wis. Mar. 16, 2016), which was decided just two months after *Jazz* and presented "almost the identical issue," *id.* at \*4, Judge J.P. Stadtmueller came to the opposite conclusion, holding that plaintiffs did not violate their protective order when, in connection with efforts to obtain additional discovery in related IPR proceedings, they told the USPTO that they had "identified eight (8) Snap-on documents from the corresponding [district court] litigation that are relevant to secondary considerations," and listed those eight documents by their bates numbers. *Id.* at \*2. "The Court believes there is a distinction between the use of knowledge regarding the existence of certain documents versus the use of the confidential content within the documents." *Id.* at \*4. In reaching that conclusion, Judge Stadtmueller noted that a protective order should be interpreted "to comply with common sense," *id.* at \*5 (quoting *In re Dual–Deck Video Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993)), and explained that the interpretation championed by Snap-on would "lead[ ] to absurd results that would give an unfair competi-

tive advantage to Snap-on and undermine the efficacy of IPR." *Id.*

Similarly, in *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 250 F.R.D. 426 (D.Neb.2008), Magistrate Judge Thomas D. Thalken rejected defendants' claim that plaintiff improperly "used" documents produced in the district court by seeking their disclosure in a related interference proceeding before the USPTO for the purpose of impeaching a witness there. *Id.* at 433–35. In *Streck,* plaintiff's counsel did not merely allude to the existence of the documents at issue; he told the USPTO that he "has reason to believe that, based on documents produced by [the defendants] in the Nebraska limitation [sic], Mr. Veronneau is mistaken." *Id.* at 434 n. 4 (first alteration in the original). Counsel thus revealed, at least in broad strokes, the contents of the documents that he was not permitted to "use" except in the Nebraska litigation itself. Nonetheless, Judge Thalken denied defendants' motion for sanctions, ruling that they were "straining the term 'use,' " and noting that "[t]he plaintiff was not relying on the materials themselves, but attempting to secure their disclosure in the interference proceeding." *Id.* at 435.

*In re Dual–Deck* is also instructive. The stipulated protective order in *Dual–Deck* stated that discovery materials, whether or not confidential, "shall not be used at any time for any ... purpose whatsoever" other than preparing or trying the case in which they were produced. 10 F.3d at 694. In discovery, plaintiff Go-Video obtained information suggesting that defendants committed antitrust violations beyond those already alleged. *Id.* After Go-Video was denied leave to amend, it relied on the same discovery (a) to file a second lawsuit;

---

**2.** Royal Park's demand that Morgan Lewis field two entirely separate litigation teams— one to defend Deutsche Bank in this case and one to defend U.S. Bank against nearly identi-

cal allegations by the same plaintiff—suggests that another goal may be simply to drive up defendants' litigation costs.

(b) to move for an anti-spoliation order in the second suit (supported by references, filed under seal, to the discovery from the first case); and (c) to serve a discovery request in the second suit which also referred to discovery obtained in the first case. *Id.* The district court found Go-Video in contempt, but the Ninth Circuit vacated, holding that the district court committed a "clear error of judgment." *Id.* at 695–96. The appellate court expressly refused to apply the no-use-whatsoever language "literally," where such a reading would render the order "absurd." *Id.* at 695.[3] Instead, it concluded that Go-Video "substantially complied with a reasonable interpretation of the protective order," *id.* at 696, and "could not properly be held in contempt." *Id.*

I recognize that *Dual–Deck* was a contempt case—such that "substantial compliance" was sufficient to avoid liability even if Go-Video committed "technical violations" of the protective order, *id.* at 695— and in any event is not binding in this District. I need not decide, however, whether the Protective Order before me prohibits Deutsche Bank from filing a new lawsuit based on information learned through discovery in this one. I need only decide whether it prohibits Deutsche

Bank's lawyers from using their knowledge of what has been produced here to advocate for the production of the same documents, if otherwise discoverable, in a parallel case against a different defendant. I conclude that it does not. I further conclude that Royal Park, like defendants in *Streck,* is "straining the term 'use,'" 250 F.R.D. at 435, when it insists that those lawyers committed a "clear violation of the Protective Order" merely by asking Royal Park to promptly turn over documents which (as Judge Francis apparently found) were within the scope of discovery in *U.S. Bank* but for unknown reasons had not yet been produced. Acknowledging the existence of such documents, in that setting and for that purpose, cannot be considered a prohibited "use" of discovery materials without rendering the Protective Order absurd.

I now turn to the second incident cited by Royal Park to illustrate Morgan Lewis's "cross-use of Discovery Material," namely, counsel's acknowledgment, during a discovery conference in this action, that he "knew about the hit rates for search terms provided to defendants in other trustee actions." Pl. Ltr. dated May 27, 2016, at 2.[4] Deutsche Bank is correct that

---

**3.** "Because Go-Video's lawyers cannot achieve total amnesia and all their subsequent work in antitrust litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the [first] suit, the order would prohibit them from representing Go-Video at all in the [second] litigation. Indeed, lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they 'use' what they learned in a prior case 'in any way whatsoever' in any 'other action.'" 10 F.3d at 695.

**4.** The "hit rate" discussion stemmed from Deutsche Bank's request that Royal Park search its electronic document databases using a list of "search strings," composed by

Deutsche Bank's counsel, to identify documents that would prove relevant to the claims and defenses in this case. *See* Mar. 30, 2016 Tr. (Dkt. No. 136), at 11:21-12:19, 29:21-30:12. The "hit rate" for each search string indicates what percentage of the documents in the database were identified ("hit on") as potentially relevant by that search string. During the conference, Robbins Geller (Royal Park's counsel in all of the trustee cases in this District) stated that Royal Park had run search strings against its databases "in every other trustee case that we have here." *Id.* at 30:6-7. Counsel went on to argue that in the other cases, "we've been getting hit rates of twenty, thirty-something percent of the database and we've said ... we'll review them and turn them over." *Id.* at 30:7-12. Counsel complained, however, that Deutsche Bank's

the hit rate information was not Discovery Material.[5] Rather, it was information about the mechanics of the electronic searches conducted by Royal Park's counsel in order to identify and produce Discovery Material. Moreover, on March 22, 2016—a week before the March 30 conference—Royal Park itself filed a letter-brief on the public docket in *U.S. Bank* discussing those mechanics in some detail, *including the fact that on March 10, 2016, it provided "hit rate" information to U.S. Bank. See* Pl. Ltr. dated Mar. 22, 2016 (Dkt. No. 76 in No. 14–CV–02590), Ex. B thereto, at 3 ("see attached hit report"). Royal Park's contention that defense counsel committed (or admitted to) a sanctionable violation of the Protective Order by mentioning that fact in my courtroom, for the purpose of demonstrating that Royal Park was capable of providing hit rate information to Deutsche Bank as well, is frivolous.[6]

### Modification of the Protective Order

■ Although it is not necessary to modify the Protective Order to resolve the current dispute, Royal Park's motion is a useful lesson concerning the dangers it presents if left in its current form. The purpose of the Protective Order is to "facilitate the production, exchange, and discovery of Discovery Materials that merit

confidential or highly confidential treatment." Prot. Order ¶ 1. The clause on which Royal Park relies, however, limits the use of "[a]ll" Discovery Materials, whether or not confidential, to "the prosecution or the defense of this Action." *Id.* ¶ 2. This makes little sense except as a potential tool to prevent opposing counsel from cooperating with one another to advocate effectively for their clients. *See Milwaukee,* 2016 WL 1719657, at *5 ("The purpose of the protective order . . . was to protect from the disclosure of confidential information—not to prevent the discovery of relevant documents.").

The prohibition on "using" Discovery Materials in other cases is also problematic, as illustrated above. Particularly where, as here, two lawsuits have been filed by the same plaintiff, in the same court, on the same legal theories, against two defendants who already share the same counsel, it is difficult to imagine what non-tactical objection Royal Park could have to the prospect of those defendants sharing discovery as well. *See Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.,* 287 F.R.D. 130, 134 (E.D.N.Y.2012) (granting plaintiffs motion, in products liability case against dryer manufacturer, to modify protective order so that plaintiffs lawyers

proposed search strings produced a "ninety-something percent hit rate, and so there's something going wrong here, and it's not reasonable." *Id.* at 30:19-21. Defendant's counsel asked Royal Park for the hit rates on each of Deutsche Bank's individual search strings—so that it could determine whether the excessively high aggregate hit rate of "ninety-something percent" resulted from one or more individual search strings that could be modified to bring down the rate—and advised me, in this context, that Deutsche Bank "gave hit rates to two other defendants." *Id.* at 68:20-70:8.

5. As set forth in the Protective Order, Discovery Material includes "documents, testimony, transcripts, video, audio, exhibits, interroga-

tory answers, responses to requests for admission, electronically stored information ('ESI'), and any other materials and information (including, to avoid ambiguity, any copies, summaries, or derivations thereof) produced or provided by the Parties and any non-party during discovery in the Action." Prot. Order at 1.

6. Even if Royal Park's analysis was correct, counsel's comments during the March 30 conference would constitute a violation of the *U.S. Bank* Protective Order, not the Protective Order entered in this case. A search of the *U.S. Bank* docket discloses that no comparable sanctions motion has been filed in that action.

could share discovery with lawyers representing affiliated corporations in similar litigation against same manufacturer). Sharing discovery "is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases." *Id.* It would also put an end to litigation sideshows like the instant sanctions application, while continuing to protect genuinely confidential information, which would remain subject to strict limits on its use and dissemination.

### Conclusion

Royal Park's application for sanctions (Dkt. No. 170) is DENIED.

The parties are directed to meet and confer promptly for the purpose of preparing modifications to the Protective Order: (a) to permit the use of non-confidential discovery materials for purposes other than "the prosecution or the defense of this Action," and (b) to permit discovery materials, including confidential and highly confidential discovery materials, to be shared among the parties and counsel in this action and *U.S. Bank.* The parties' proposed modifications should be submitted on or before June 28, 2016, in the form of a stipulation and order (if the parties are agreed), or simultaneously-filed letter-applications attaching each party's proposal (if they are not agreed).

**SO ORDERED.**